# IN THE SUPREME COURT OF IOWA

No. 14–0049

Filed May 30, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**LORI JO KIEFFER-GARRISON,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Review of a report filed by the Grievance Commission recommending suspension of an attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Lori J. Kieffer-Garrison, Davenport, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Disciplinary Board (Board) charged an attorney with violations of the Iowa Rules of Professional Conduct after she repeatedly missed appellate deadlines in several criminal cases, received twenty default notices as a consequence of those missed deadlines, failed to pay resulting penalties in a timely fashion over a period of two years, and allegedly made a knowingly false statement to the court. After a hearing, a division of the Grievance Commission of the Supreme Court of Iowa found the attorney's actions violated several ethical rules and recommended a suspension of her license to practice law. Upon our review, we find the Board proved the alleged violations, and we conclude the appropriate sanction is a suspension of the attorney's license for a period of six months.

## I. Background Facts and Prior Proceedings.

Lori Jo Kieffer-Garrison was first licensed to practice law in Iowa in 2002.[1] She was privately admonished in 2009 and 2010, each time for failure to cure a notice of default from the clerk of this court. Both private admonitions were based on violations of Iowa Rules of Professional Conduct 32:1.3 and 32:8.4(d).

The Board's complaint in this case alleged Kieffer-Garrison's pattern of neglecting her obligation to comply with the deadlines imposed by our rules of appellate procedure continued in 2011 and 2012. In particular, the amended complaint alleged and Kieffer-Garrison admitted she received more than twenty notices of default after failing to meet various deadlines and timely pay monetary penalties for such defaults in

---

[1]She was first licensed to practice law in Illinois in 2001.

nine separate criminal case appeals. The Board alleged—and Kieffer-Garrison admitted—these failures and defaults constituted violations of rules 32:1.3 (lawyer shall act with reasonable diligence and promptness in representing a client); 32:3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); 32:3.4(c) (lawyer shall not knowingly disobey an obligation under the rules of a tribunal); and 32:8.4(d) (professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

In a separate count of the amended complaint, the Board alleged Kieffer-Garrison falsely represented to both her client, Anthony McGee, and the clerk of this court that she had timely filed by mail an application for further review in a postconviction appeal. This conduct, the Board alleged, violated rules 32:1.2(a) (lawyer shall abide by a client's decisions concerning the objectives of representation), 32:1.3, 32:3.2, 32:3.3(a)(1) (lawyer shall not knowingly make a false statement of fact to a tribunal), 32:3.4(c), and 32:8.4(d). Kieffer-Garrison denied the Board's allegations in this count and testified before the commission that she prepared the application for further review and followed her routine office procedure for timely filing it through the mail.

The commission found the Board met its burden of proving Kieffer-Garrison violated rules 32:1.3, 32:3.2, 32:3.4(c), and 32:8.4(d) as a consequence of her serial failures to comply with deadlines imposed by our rules of appellate procedure. The commission also found Kieffer-Garrison violated rules 32:1.2(a), 32:1.3, 32:3.2, 32:3.3(a)(1), 32:3.4(c), and 32:8.4(d) in failing to prepare and timely file the application for further review, and in falsely representing to McGee and the court that she had done so.

The commission recommended a one-year suspension of Kieffer-Garrison's license.

## II. Scope of Review.

Our review of the commission's report is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 366 (Iowa 2005). "Under this standard of review, we give weight to the factual findings of the Commission, especially with respect to witness credibility, but we find the facts anew." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 131 (Iowa 2004). "Although we respectfully consider the discipline recommended by the Commission, the final decision on the appropriate sanction is for this court." *Howe*, 706 N.W.2d at 366. The Board must prove its allegations of misconduct by a convincing preponderance of the evidence. *Id.*

## III. Ethical Violations.

We find the Board proved by a clear preponderance of the evidence that Kieffer-Garrison violated rules 32:1.3, 32:3.2, 32:3.3(a)(1), 32:8.4(c), 32:1.2(a), and 32:8.4(d) in her repeated failures to comply with the deadlines imposed by our rules of appellate procedure. Our analysis will proceed with a discussion of the evidence pertaining to each of the violations alleged by the Board.

**A. Rule 32:1.3: Reasonable Diligence and Promptness.** A lawyer violates rule 32:1.3 in failing to act with reasonable diligence and promptness in representing a client. Iowa R. Prof'l Conduct 32:1.3. Kieffer-Garrison violated this rule in repeatedly failing to comply with deadlines imposed by the rules of this court in nine separate criminal cases and in failing to promptly pay penalties imposed by the court. The documentary evidence of more than twenty default notices issued to her in those cases overwhelmingly supports our finding of this violation.

**B.** **Rule 32:3.2: Expediting Litigation.** This rule is violated when a lawyer fails to "make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. An attorney violates this rule by failing to appear for status conferences and respond to court inquiries. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 679–80 (Iowa 2010). Similarly, an attorney violates this rule in failing to comply with orders compelling discovery responses. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 548 (Iowa 2012). We conclude Kieffer-Garrison's serial failures to comply with the requirements of this court's procedural rules governing the timely presentation and progression of appeals constituted a violation of her obligation to demonstrate reasonable efforts to expedite numerous appeals consistent with her clients' interests.[2]

**C.** **Rule 32:3.4(c): Knowing Disobedience of an Obligation Under the Rules of a Tribunal.** A lawyer's obligation to act with fairness to opposing parties and their counsel includes the obligation to refrain from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no obligation exists." Iowa R. Prof'l Conduct 32:3.4. In this case, there can be no doubt that Kieffer-Garrison knew the rules of this court imposing time deadlines pertaining to appeals, and that she persistently violated them in several criminal appeals. Her violations of the rules occurred despite her acknowledged receipt of numerous notices of those deadlines informing her of the specific rules requiring timely filings. Our decisions

---

[2]As the Board did not contend Kieffer-Garrison engaged in conduct for the purpose of frustrating the judicial process, we need not address whether she acted with such intent. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011).

have explained, however, that the purpose of rule 32:3.4(c) is to ensure " '[f]air competition in the adversary system' through proper adherence to discovery and evidence rules." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d at 524, 533 (Iowa 2011) (quoting Iowa R. Prof'l Conduct 32:3.4(c) cmt. 1). We find the Board failed to meet its burden of proving Kieffer-Garrison's conduct undermined the competitive fairness of the appeals or disadvantaged opposing counsel. Accordingly, we find no violation of rule 32:3.4(c) by Kieffer-Garrison in this case.

**D. Rules 32:8.4(c); 32:3.3(a)(1): Engaging in Dishonesty; Lack of Candor Toward a Tribunal in the *McGee* Case.** We now turn to the Board's claim that Kieffer-Garrison failed to prepare and timely file an application for further review in the *McGee* case and falsely represented to the clerk of this court she had done so. We find Kieffer-Garrison was appointed on June 23, 2011, as McGee's counsel in a postconviction relief appeal. On October 7, the clerk of this court issued a notice of default informing Kieffer-Garrison she had failed to timely serve McGee's proof brief and appendix designation. Kieffer-Garrison subsequently filed both the proof brief and the appendix designation thirty-six and forty-three days late, respectively. Another notice of default was issued by the clerk on February 27, 2012, as a consequence of Kieffer-Garrison's failure to timely file the appendix, which was eventually filed twenty-seven days late.

The court of appeals affirmed the dismissal of McGee's petition for postconviction relief on June 13. McGee learned of this development not from Kieffer-Garrison, but via his receipt of a copy of the decision from the court. McGee conferred with Kieffer-Garrison who agreed to prepare and file an application for further review by this court.

No such application was received by the clerk of this court in due course, however, and procedendo was therefore issued on July 11. Thereafter, McGee called the clerk's office to check on the status of his appeal. He was informed that an application for further review had not been filed in his case.

McGee went to Kieffer-Garrison's office to inquire. After Kieffer-Garrison assured McGee an application had been filed, McGee called the clerk's office. He handed his cell phone to Kieffer-Garrison who spoke with a deputy clerk. Kieffer-Garrison told the deputy she had sent an application to the clerk via the postal service but could not supply tracking confirmation. When the deputy asked Kieffer-Garrison if she possessed a copy of the application, Kieffer-Garrison said she was unable to locate a copy that could be promptly transmitted to the clerk's office by email or fax. The deputy informed Kieffer-Garrison that her only remaining option was to file a motion to reconsider and reinstate the appeal.

Kieffer-Garrison's opposing counsel, an assistant attorney general representing the state in McGee's appeal, never received a copy of the application from Kieffer-Garrison. On August 13—four weeks after procedendo issued—Kieffer-Garrison faxed to the clerk of this court a motion to reconsider and reinstate McGee's appeal and request further review. The motion asserted she had "filed a request for further review," but no application for further review was attached.

This court's clerk finally received an application for further review from Kieffer-Garrison pertaining to McGee's case on December 5. The application included a certificate of mailing signed by Kieffer-Garrison certifying the document had been filed on July 2 by mailing it to the clerk and to opposing counsel at the attorney general's office.

Upon our review of this evidence, we find Kieffer-Garrison violated rules 32:3.3(a)(1) and 32:8.4(c) when, after failing to prepare and timely file the application for further review, she falsely represented to McGee and this court that she had done so.

In making these findings, we give weight to and agree with the commission's finding as to Kieffer-Garrison's lack of credibility. Although she persisted at the hearing before the commission in claiming she prepared the McGee application and placed it in the mail for filing and service, her testimony on this point is unsupported by the credible evidence. Neither the clerk of this court nor Kieffer-Garrison's opposing counsel received the application through the mail before procedendo issued in the appeal. Furthermore, after McGee confronted Kieffer-Garrison with the fact that the clerk of this court had not received the application, she was unable to produce a copy of the document from her office computer system or paper files before she was notified of the ethical complaint.[3] Even more salient, in our view, is the fact that her billing records submitted in support of her request for compensation in the McGee case did not include an entry for time spent in preparing the application.

**E. Rule 32:1.2(a): Failing to Abide by a Client's Decisions Concerning Objectives of Representation.** This rule provides a lawyer shall, subject to limitations not applicable here, "abide by a client's decisions concerning the objectives of representation." Iowa R. Prof'l Conduct 32:1.2(a). We find the board proved by a convincing

---

[3]Kieffer-Garrison did later provide the Board with a copy of an application for further review in McGee's case, but the credible evidence supports our finding this document was prepared and mailed after Kieffer-Garrison was notified of the default and ethical complaint.

preponderance of the evidence that Kieffer-Garrison failed to abide by McGee's objective and her agreement to prepare and timely file the application for further review.

**F.  Rule 32:8.4(d): Conduct Prejudicial to the Administration of Justice.**  A lawyer's conduct violates rule 32:8.4(d) if "it impedes 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' "  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 267 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 103 (Iowa 2012)). Violations of this rule impede the efficient operation of the courts and waste judicial resources.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 238–39 (Iowa 2012).  We find Kieffer-Garrison's conduct was, by a convincing preponderance of the evidence, prejudicial to the administration of justice because it caused the court to waste judicial resources in addressing a motion falsely asserting she filed an application for further review on behalf of McGee.

**IV.  Sanction.**

"In considering an appropriate sanction, this court considers all the facts and circumstances, including the nature of the violations, the attorney's fitness to practice law, deterrence, the protection of society, the need to uphold public confidence in the justice system, and the need to maintain the reputation of the bar."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 463 (Iowa 2014).  We consider mitigating and aggravating circumstances as we calibrate the sanction.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (per curiam).  We give respectful consideration to the commission's findings and conclusions, but "may impose a greater or lesser sanction than that recommended by the commission."  *Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 509–10 (Iowa 2012). We also seek to "achieve consistency with our prior cases when determining the proper sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010).

"When neglect is the primary violation, the sanction generally ranges from a public reprimand to a six-month suspension." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007). When neglect is accompanied by other misconduct, however, the sanction imposed will likely be more severe than when neglect stands alone. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 685 (Iowa 2006). A brief review of this court's recent disciplinary cases will illustrate factors influencing our determination of the appropriate sanction in this case.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Stein*, 586 N.W.2d 523 (Iowa 1998), we concluded an attorney's neglect of two medical negligence cases and his numerous misrepresentations made to cover up his neglect warranted a suspension of six months. *Stein*, 586 N.W.2d at 526. In *Walker*, we imposed a suspension of six months as the sanction for an attorney's neglect of four clients' cases and misrepresentations calculated to conceal his neglect. *Walker*, 712 N.W.2d at 686. In *Earley*, we suspended for four months the license of an attorney who neglected the interests of three clients, failed to deposit retainers from two clients in a trust account, and failed to promptly return a file to a client. *Earley*, 729 N.W.2d at 442–44. In *Iowa Supreme Court Attorney Disciplinary Bd. v. Conroy*, 845 N.W.2d 59 (Iowa 2014), we imposed a suspension of six months as a consequence of an attorney's neglect of appeals in six criminal cases and one postconviction relief case. *Conroy*, 845 N.W.2d 59, 67–68. Although Conroy made no

misrepresentations to hide his neglect, we counted his history of two prior admonitions, three temporary suspensions, and one suspension of sixty days as aggravating factors affecting our determination of the appropriate sanction. *Id.* at 67.

Sanctions for violations involving dishonesty have ranged from a brief suspension of two months to revocation. *Van Ginkel,* 809 N.W.2d at 110–11 (imposing a suspension of two months for filing interlocutory report with a false statement and other violations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh,* 728 N.W.2d 375, 382 (Iowa 2007) (revoking the license of a lawyer for multiple instances of dishonest conduct including forging an executor's name on a probate report submitted to the court after previous suspension for similar dishonest conduct).

Kieffer-Garrison's neglect of legal matters and her persistent misrepresentations were serial acts of misconduct, rather than an isolated misadventure. "Normally, a pattern of misconduct gives rise to enhanced sanctions." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner,* 621 N.W.2d 183, 187 (Iowa 2001). Kieffer-Garrison's persistent perpetuation of a falsehood is a "remarkable aggravating factor." *McGinness,* 844 N.W.2d at 466–67 (noting attorney's persistence in asserting misrepresentation was "a remarkable aggravating factor" and suspending attorney's license for six months).

In determining the appropriate sanction in this case, however, we also consider Kieffer-Garrison's depression during the relevant period and her appropriate pursuit of medical treatment. Depression, while not excusing the disciplinary violations, may have a bearing on our determination of the appropriate severity of sanction. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 292–96

(Iowa 2002) (considering major depression as a factor influencing the sanction). Having considered the relevant factors affecting our determination of an appropriate sanction, we conclude Kieffer-Garrison's license should be suspended with no possibility of reinstatement for six months.

**V. Conclusion.**

We suspend Kieffer-Garrison's license to practice law in this state with no possibility of reinstatement for a period of six months from the date of the filing of this opinion. This suspension shall apply to all facets of law. Iowa Ct. R. 35.13(3). She must establish prior to any reinstatement that she has not practiced law during the suspension period, that she has conformed with the rules and procedures governing reinstatement found in Iowa Court Rule 35.14, and that she has satisfied the notification requirements set forth in Iowa Court Rule 35.23. The costs of this proceeding are taxed to Kieffer-Garrison. *See* Iowa Ct. R. 35.27.

**LICENSE SUSPENDED**.